MILBANK, TWEED, HADLEY & M^CCLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005-1413
(212) 530-5000
Luc A. Despins
Susheel Kirpalani
Proposed Attorneys for Official
Committee Of Unsecured Creditors


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
In re:                        :
                              :     Chapter 11
                              :
TELIGENT, INC., et al.,       :     Case No. 01-12974 (SMB)
                              :
            Debtors.          :     Jointly Administered
                              :
------------------------------x

**MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR REARGUMENT AND RECONSIDERATION, UNDER
FED. R. BANKR. P. 9023 AND S.D.N.Y. LBR 9023-1,
OF CERTAIN "FIRST DAY" RELIEF RELATING TO DEBTORS'
AUTHORITY TO PAY PREPETITION TRADE CREDITOR CLAIMS AND
<u>TO IMPLEMENT EMPLOYEE RETENTION AND SEVERANCE PROGRAM</u>**

TO THE HONORABLE STUART M. BERNSTEIN
CHIEF UNITED STATES BANKRUPTCY JUDGE

　　　　The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Teligent, Inc. <u>et al.</u> (collectively, "<u>Teligent</u>" or the "<u>Debtors</u>"), debtors and debtors-in-possession in the above-captioned jointly administered cases, hereby moves this Court for reargument and reconsideration of certain "first day" relief -- which is currently stayed under Fed. R. Bankr. P. 6004(g) -- relating to the Debtors' authority to pay prepetition trade creditor claims and to implement an employee retention and

severance program.  In support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Debtors have signaled since the first day that they hope the Court will hear these cases without any static interference from unsecured creditors.  Teligent, a company which just a year ago enjoyed a market capitalization in excess of a billion dollars, and which just a month ago substantial amounts of the Debtors' equity were sold to a strategic investor, now contends unsecured creditors will not share in the enterprise value of the business.  Indeed, Teligent has filed chapter 11 not to reorganize or rehabilitate its business, but to locate a strategic investor or a sale[1] transaction that will -- according to the Debtors -- inure solely to the benefit of Teligent's banks.

2.  The Debtors are not trying to hide the ball in any way.  At the first day hearing, the Debtors' counsel informed the Court that the Debtors believe that "the constituents that would be affected" by relief in chapter 11 "are the bank group" -- "the real party in interest".  First Day Tr. at 46, 104.  Although the Court initially ruled that certain of the first day relief requested was extraordinary and would

---

[1]  See Affidavit of James V. Continenza Pursuant to Local Bankruptcy Rule 1007-2 ("First Day Aff.") at ¶ 35.

2

require an evidentiary record,[2] such relief was ultimately granted *without any evidence* (only counsel's argument).[3] The Committee is left to understand that these rulings therefore may have been premised on the Debtors' unprecedented argument that general unsecured creditors have no meaningful voice in chapter 11 if management believes they are out of the money.[4]

       3.    The Committee attempted without success to resolve the issues raised by this Motion consensually with the

---

[2] See First Day Tr. at 46:10-15 (referring to the showing required by each of the first day motions, the Court ruled: "*[Y]ou will have to make a record for that*. And I doubt you can do it with nonhearsay testimony today.") (emphasis added); id. at 102:4-8 ("I understand the doctrine of necessity. But you are going to have to make a showing as to that. I am just not sure you will be able to do that today . . .").

[3] Despite's counsel's representation to the contrary, see First Day Tr. at 103:25, the affidavit of the Debtors' officer submitted upon the commencement of these cases did *not* even address the "essential need" argued in support of the first day relief in any way. Indeed, the *only* proffer of testimony or offer of proof occurred with respect to a certain good-faith findings in the interim cash collateral stipulation. See First Day Tr. at 81:3-24 (proffer of Mr. James Continenza).

[4] The first day transcript is replete with numerous statements of Debtors' counsel purporting to rely on an unsupported legal proposition (outside of a plan): "*it does not appear, under the present circumstances, that there is going to be value of this estate available to make a distribution to unsecured creditors* . . . . I believe *[that is] an important factor for the Court to consider*, again, weighing the views of the prepetition lenders . . . versus the empty chair [of] the committee, who is not here today." First Day Tr. at 105 (emphasis added).

3

Debtors.[5]  It became clear from these efforts that the Committee would have been granted a meaningful opportunity to review these issues if the Debtors believed unsecured creditors were likely to receive distributions in these cases.  Thus, the issue for Teligent's chapter 11 reorganization has already been telegraphed, and the Committee submits it should be resolved in this infancy stage -- is the Committee's statutory function eviscerated because the Debtors believe there will be insufficient value to pay secured creditors in full?  The Committee knows of no rule of law that conditions the powers and duties conferred upon it by 11 U.S.C. § 1103(c) on the Debtors' views regarding valuation and the level of purported secured debt.

---

[5]   With respect to the Interim Trade Claims Order (as defined below), the Debtors reluctantly agreed to give the Committee notice before paying prepetition trade claims "to the extent practicable" but the Debtors would nonetheless adhere to their discretionary judgment as to which payments are in fact "necessary" if the Committee opposed payment.  Similarly, with respect to the first day order approving the KERP Motion, the Debtors refused to enter into a stipulation that would deem such relief as granted on an interim basis pending a final hearing and opportunity for the Committee to evaluate and raise issues with the Court, if appropriate.

**INTRODUCTION**

4.  On May 21, 2001 (the "Petition Date"), the Debtors filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On May 30, 2001, the Office of the United States Trustee appointed the Committee, consisting of the following seven members:  First Union National Bank, as indenture trustee; Loomis Sayles & Company, L.P.; Nortel Networks Inc.; Dean & Company Strategy Consultants, Inc; Webmethods, Inc.; DMR Consulting Group, Inc.; and Sidata (SC) f/k/a Timebridge Technologies, Inc.  As of the date hereof, no trustee or examiner has been appointed in these cases.

6.  On the Petition Date, the Debtors filed several motions seeking "first day" relief prior to the Committee's formation with minimal or no notice to unsecured creditors. Most, if not all, of the Debtors' first day motions were granted, with certain modifications, following oral argument thereon.  See Transcript of First Day Orders, May 21, 2001 attached hereto as Exhibit A ("First Day Hearing Tr.").  For the reasons set forth below, this Motion respectfully seeks reargument and reconsideration of two of the Debtors' motions,

5

namely, (i) Motion for Order Granting Debtors Authority for Provisional Payment of Prepetition Claims of Essential Trade Creditors (the "Trade Claims Motion"), and (ii) Motion for Order Authorizing Debtors to Implement Key Employee Retention and Severance Program (the "KERP Motion").  The Committee respectfully requests oral argument on this Motion be scheduled on or before June 8, 2001 in order to prevent depletion of the Debtors' assets by the selective payment of prepetition claims.[6]

### REARGUMENT AND RECONSIDERATION IS NECESSARY TO PERMIT THE COMMITTEE TO BE HEARD

7.   Under Fed. R. Bankr. P. 9023 and S.D.N.Y. LBR 9023-1, the moving party typically "must demonstrate that the court overlooked controlling decisions or factual matters 'that might materially have influenced its earlier decision.'"  In re Hagerstown Fiber Limited Partnership, 226 B.R. 353, 355 (Bankr. S.D.N.Y. 1998) (granting motion for reargument and reconsideration) (quoting Anglo-American Ins. Group v. CalFed,

---

[6]  Entry of the Court's interim order granting the Trade Claims Motion occurred on May 29, 2001 (the "Interim Trade Claims Order").  See Docket No. 45.  Pursuant to Fed. R. Bankr. P. 6004(g), this order was automatically "stayed until the expiration of 10 days after entry," or June 8, 2001.  Accordingly, in order to prevent depletion of assets of the estate through the Debtors' selective payment of prepetition claims, the Committee requests a hearing be held on this Motion to reargue and reconsider prior to the order becoming effective.  The KERP Motion was apparently approved on a final basis on the Petition Date, and the order approving such motion was entered on May 24, 2001, see Docket No. 31.

6

Inc., 940 F. Supp. 554, 557 (S.D.N.Y. 1996)). As this Court noted in Haberstown, however, the purpose of this narrow construction is "to avoid repetitive arguments on issues that the court has already fully considered." Id. at 355. Here, the Committee -- the only party with a fiduciary duty to act exclusively for general unsecured creditors -- was not afforded **any** opportunity to appear and be heard and this unique circumstance should weigh heavily in the Court's review of this Motion.

8. As the Court stated when asked to approve the first day relief sought by the Debtors in this case:

> [Y]ou have some other applications which we could talk about that I would not be inclined to sign today without hearing from a Creditors' Committee. You want to pay prepetition debt.... ***I usually wait to hear from the Creditors' Committee on that. It is the creditors' money. I would like to hear what they have to say about it***.

First Day Hearing Tr. at 16 (comments of the Court) (emphasis added).

### COURT SHOULD RECONSIDER RULING WHICH GIVES DEBTORS BROAD DISCRETION TO PAY ALLEGED "ESSENTIAL" TRADE CREDITORS

9. The Court' indicated to Debtors' counsel its "discomfort" and need "for a record" before entering an order on alleged "essential trade creditors." The Trade Claims Motion makes no demarcation as to how the Debtors' are determining which creditors are indeed "critical" to the reorganization.

7

The Committee does not believe the Interim Trade Claims Order incorporates a workable standard capable of meaningful review by general unsecured creditors -- at bottom, the Debtors are left entirely to their discretion and business judgment, subject to the overall cap as to use of cash collateral.  Although the banks' effectively have "pocket veto" power over which payments can be made, the Committee does not agree that the banks who "control the purse strings" are guardians of all creditor interests.[7]

       10.    Moreover, the Interim Trade Claims Order impermissibly gives the Debtors broad discretion which exceeds the bounds of applicable law.  In In re Just for Feet, Inc., 242 B.R. 821 (D. Del. 1999), the district court held that a debtor relying on section 105(a) and the "necessity of payment" doctrine must submit *evidence* as to precisely which creditors are in fact likely to refuse to provide essential goods or services, the basis for such belief, and the attendant harm that would befall the estate.  See id. at 826 (denying "critical vendor" motion to the extent no evidence was submitted to

---

[7]    In this regard, the Committee takes absolutely no comfort in leeway that purported secured creditors may have given to management in exchange for admissions and waivers contained in a cash collateral stipulation with the Debtors.

8

justify payment to certain allegedly essential creditors).[8] The Court should reject the Debtors' proposed legal standard which would eliminate the need for an evidentiary showing to demonstrate "necessity of payment" whenever debtors can obtain the consent of allegedly secured creditors as part of a cash collateral stipulation. The Debtors failed to create any record for the Court to make the required findings and employing a discretionary standard is not permitted simply because purported secured creditors are willing to defer to the Debtors' business judgment on such matters -- discretion, regardless of the eloquent wording of the legal standard, can only be permitted <u>after</u> a showing of necessity has been made. See id. at 826 (holding that "**the court must determine** whether the payment of pre-petition claims of trade vendors in this case is critical to the Debtors' reorganization").

11. The Debtors' arguments to the contrary, such re-ordering of priorities, and the dissimilar treatment of similarly situated unsecured creditors that is prohibited by the Bankruptcy Code, cannot be permitted based on a bilateral

---

[8] Vague doomsday-scenario arguments of counsel cannot meet this high evidentiary burden: "The **debtors fear** that vendors and third-party technicians necessary for the support of the network **may** refuse to provide postpetition services . . . ." First Day Tr. at 51:13-17. Nor can mere speculation be the basis for such ruling: "[I]t is only **logical to draw the inference** . . . that they would be

9

agreement between banks and debtors.

## COURT SHOULD RECONSIDER FINAL ORDER ON KERP MOTION AUTHORIZING USE OF PROPERTY UNDER 11 U.S.C. § 363 WITHOUT NOTICE AND OPPORTUNITY OF UNSECURED CREDITORS TO BE HEARD

12.  The Committee acknowledges that a debtor-in-possession has a legitimate need to retain key employees in order to facilitate a successful rehabilitation and reorganization.  But **every** chapter 11 debtor loses employees as a result of its financial difficulties and uncertainty.  That fact does not entitle debtors-in-possession to ignore the right of parties to be heard on how to address such issues.  Indeed, the KERP Motion was not (nor could it have been) even premised on the "necessity of payment" doctrine.  As in all chapter 11 cases, approval of an employee retention and severance program under Bankruptcy Code section 363 requires notice and a hearing.  There is no basis in the Bankruptcy Code to obtain authority to make such payments in the absence of compliance with section 363's notice requirements.[9]

---

nervous about providing postpetition service to this estate."  First Day Tr. at 52:7-10.

[9]  The precedents cited in the Debtors' KERP Motion do not provide a basis for justifying departure from the unambiguous requirements of the Bankruptcy Code.  Two of the three purported precedents (including this Court's order in the Family Golf Centers case) involved motions which were **filed with the express support of the statutory committee of unsecured creditors**.  The sole precedent therefore relied on by the Debtors for a "first day" employee retention and severance program is the Jacom Computer Services case, a case involving a non-operating

10

13. Although the Committee does not, at this point, suggest that modifications to the Debtors' employee retention and severance program would be warranted, the Committee cannot agree as to the propriety of granting such relief on the first day. In *every* large chapter 11 case, such programs are not only discussed but often negotiated with creditors' committees and other key parties in interest. Failure to do so should be grounds for denying the motion. See, e.g., In re Geneva Steel Company, Inc., 236 B.R. 770 (Bankr. D. Utah 1999) (denying employee retention and severance program without prejudice for failure to discuss program with key constituencies and inviting debtor to renew motion following such discussion).

14. Without the Committee's involvement, the Committee can only speculate how or why the levels of retention and severance awards were determined. Although few details are known about the employee retention program, at this stage, the Committee certainly would raise with the Debtors (and the Court) the lump-sum nature (as opposed to salary continuation) of severance payments and the failure of the severance program to include mitigation as a factor if employees do in fact locate other employment. Cf. id. at 773-74 ("it does not make sense to

---

debtor which filed chapter 11 solely to wind down and collect accounts receivable. The Jacom Computer Services order, which was approved by Judge Blackshear without any

use the severance plan to provide the senior executives with a windfall. To be acceptable to this court, the severance plan must contain a mitigation provision that reduces the amount payable in the event the executive obtains other employment . . . reimbursement period").

15. Once again, the Debtors rely solely on its stipulation as to the validity of the purported secured claims and counsel's unsubstantiated comments about valuation as a basis for a new rule of law -- if management believes that the banks are the only parties likely to receive distributions, then a chapter 11 case can be filed solely for their benefit, and use of property of the estate should be approved as long as the banks agree.[10] Indeed, after the first 60 days of these cases -- the brief window of time given to the Committee by the banks to review their liens -- the Debtors' counsel will likely suggest to this Court that this chapter 11 case is a two-party affair between management and the banks, and the Committee would no

---

      analysis or discussion, is not binding on, and should not be followed by, this Court.

[10]    To the extent the Court was asked to take comfort in the fact that the banks agreed to include these payments in the carve-out described in the interim cash collateral stipulation, this fact is a red herring. The banks are not agreeing to forego a distribution on a portion of their claims against the Debtors. They are simply agreeing that some creditors can receive payment before they are paid in full -- this does not benefit general unsecured creditors in any way.

12

longer be needed (other than perhaps to provide third party releases under a plan).

16. The Committee would like to discuss the KERP Motion with the Debtors and their advisors but the Committee was formed just two business days prior to the deadline for submitting this Motion for reconsideration and reargument. The Committee could not, as a fiduciary to unsecured creditors, permit the order approving the KERP Motion to become a final unappealable order when it has not had a fair opportunity to review and analyze the details of the program, the number of employees included, and whether the program will enhance the ability of the Debtors to rehabilitate and reorganize its business.[11] As requested of the Debtors, the Committee respectfully requests that the Court modify the order approving the KERP Motion by making it an interim order pending a final hearing.

### WAIVER OF SEPARATE MEMORANDUM OF LAW

17. Based on the citations to the record and supporting authorities contained herein, and because this Motion presents no novel issues of law, the Committee respectfully requests that the Court waive S.D.N.Y. LBR 9013-1(b)'s

---

[11] Despite the Committee's request, the Debtors have not even provided the Committee with the 25-case comparable analysis supporting the KERP Motion, referenced in paragraph 26 thereof.

requirement of filing a separate memorandum of law in support of this Motion.

## CONCLUSION

18. Based on the foregoing, the Committee respectfully requests that the Court, (i) vacate the Interim Trade Claims Order pending a final hearing, (ii) modify the order approving the KERP Motion by deeming it an interim order, pending final hearing to be held 20 days following the receipt by the Committee of the back-up details and comparative analysis supporting the Debtors' employee retention and severance program, and (iii) grant the Committee such other relief as is just and proper.

Dated: New York, New York
       June 4, 2001

>Respectfully submitted,
>
>MILBANK, TWEED, HADLEY & M$^C$CLOY LLP
>
>By: /s/ Susheel Kirpalani
>   Luc A. Despins (LD 5141)
>   Susheel Kirpalani (SK 8926)
>   1 Chase Manhattan Plaza
>   New York, New York  10005-1413
>   (212) 530-5000
>
>PROPOSED ATTORNEYS FOR THE
>OFFICIAL COMMITTEE OF UNSECURED
>CREDITORS