1

2      UNITED STATES BANKRUPTCY COURT

3      SOUTHERN DISTRICT OF NEW YORK

4

5      ----------------------------------------x

6

7                In the Matter

8
                      of        Case No.
9                               01-B-12974

10                TELIGENT, INC.,
                        Debtor.
11     ----------------------------------------x
                               November 19, 2003
12
                  United States Custom House
13                One Bowling Green
                  New York, New York 10004
14

15     Hearing re motion to partially vacate an order
       authorize the assumption of a certain contract
16     with Cigna Healthcare; hearing re 9019 motion
       to approve settlement with Red Cross and
17     Norlight

18     B E F O R E:

19                HON. STUART M. BERNSTEIN,

20                   Chief Bankruptcy Judge.

21

22

23

24

25

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

2

1                    TELIGENT, INC.

2    A P P E A R A N C E S:

3

4        KIRKLAND & ELLIS
                Attorneys for Debtor
5                200 East Randolph Drive
                Chicago, Illinois  60601
6
        BY:    ANUP SATHY, ESQ.,
7                        of Counsel

8

9
        SAVAGE & ASSOCIATES, P.C.
10                Attorneys for Unsecured Claims
                Estate Rep.
11                56 Lafayette Avenue
                White Plains, New York  10603
12
        BY:    DENISE SAVAGE, ESQ.
13

14

15          SIMPSON THACHER & BARTLETT, LLP
                    Attorneys for J.P. Morgan Chase
16                  425 Lexington Avenue
                    New York, New York  10017
17
           BY:   ROBERT H. TRUST, ESQ.,
18                          of Counsel

19

20

21

22

23

24

25


         HUDSON REPORTING & VIDEO, INC. 1-800-310-1769



                                                              3



1                     TELIGENT, INC.

2     A P P E A R A N C E S (Continued):

3

4          TOGUT SEGAL & SEGAL, LLP
                    Attorneys for Cigna Healthcare
5                   One Penn Plaza
                    New York, New York  10119
6
           BY:   NEIL BERGER, ESQ.

```
 7                          of Counsel

 8
                        -AND-
 9

10
            CONNOLLY BOVE LODGE & HUTZ, LLP
11                 Attorneys for Cigna Healthcare
                   1007 North Orange Street
12                 Wilmington, Delaware  19899

13          BY:    JEFFREY C. WISLER, ESQ.,
                        of Counsel
14

15

16

17

18

19

20

21

22

23

24

25
```

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

4

1                    TELIGENT, INC.

2              P R O C E E D I N G S

3

4              THE COURT:   Go ahead, Ms.

5    Savage.   I have read all the papers.

6              MS. SAVAGE:   Pardon me?

7              THE COURT:   I have read all the

8    papers.   Go ahead.

9              MS. SAVAGE:   Which matter would

10   you like me to go forward with first, the

11   motion to vacate?

12             THE COURT:   Go forward with the

13   settlement.   There is only actually two

14   outstanding.   I have signed the other four.

15   I just wanted a supplemental affidavit.

16             MS. SAVAGE:   I have not seen the

17   order entered.   I am not getting electronic

18   notice.   I have notified the clerk's office.

19             THE COURT:   Yes.   They enter

20   the order anyway.

21             MS. SAVAGE:   Thank you, Your

22   Honor.   In that case we are only dealing with

23    American Red Cross and Norlight

24    Telecommunications.

25                    THE COURT:    Right.


        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                              5



1                    TELIGENT, INC.

2                    MS. SAVAGE:    In light of Your

3    Honor's statement at the last hearing on the

4    other four settlement motions which are Iona

5    Technical, Dell Receivable and Output

6    Technologies and C3 Communications, I felt it

7    wise to file supplemental papers on the

8    American Red Cross and the Norlight

9    Telecommunications motion that had already

10   been filed under bankruptcy Rule 9019.

11                   And what I did, Your Honor, is I

12   have provided information regarding new value

13   analysis and other information.

14                   THE COURT:    Yes, in the future I

15   don't need that kind of detail.    I just want

16    to know whether you have looked at the

17    payments, and by the way a lot of these look

18    like checks that bounced, so the payments are

19    identical so the analysis -- I just want to

20    know that you have considered these and you

21    have examined the rank and range is 30 to $60

22    million which is more or less what the Debtor

23    was doing at the particular time.   That is

24    all.

25              MS. SAVAGE:   Okay, Your Honor.


          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1              TELIGENT, INC.

2              THE COURT:   I don't want to try

3    the case.   I just want to make sure you

4    considered the issue because what I got from

5    you, basically, we entered into good faith

6    negotiations and we decided to settle for X

7    amount of dollars because it saves time and

8    expense.   That is true of every --

9          MS. SAVAGE:   That is fine, Your

10   Honor.   I understand that, and I have no

11   problem filing whatever information you need

12   to in order to make an informed decision.

13          Would you like me to make an

14   offer of proof on American Red Cross and

15   Norlight?

16          THE COURT:   Yes, what is the

17   amount of debt?  And then I understand checks

18   never cleared and it is actually less than you

19   sought originally.

20          MS. SAVAGE:   It was not that

21   they didn't clear.  They were actually voided

22   by the Debtor, so they were never negotiated.

23   With American Red Cross, we originally sued

24   for in excess of $375,000.   Thereafter, we

25   found out that a check for approximately

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

7

1          TELIGENT, INC.

2    $350,000 had been voided.    So the actual

3    total amount of the transfer was $25,212.

4                    THE COURT:    What is the

5    settlement for?

6                    MS. SAVAGE:    The settlement is

7    70 percent of that amount --

8                    THE COURT:    That is approved.

9    What is the next one?

10                   MS. SAVAGE:    The next one is

11   Norlight.    Norlight Telecommunications is a

12   little bit unusual.    It is a utility

13   company.    It turns out that some of the

14   payments made in the 90-day period were

15   advance payments for what turned out to be

16   postpetition use of utilities.

17                   Your Honor entered a utilities

18   order relating to the payment of utility

19   bills, so accordingly I could attempt to

20   recover the funds that were paid prepetition

21   for the postpetition use of utilities because

22   Teligent was entitled to pay postpetition by

23   an order entered by this Court in one of the

24    first day orders.    So, accordingly, I walk

25    away from that portion of the claim.


HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


8


1                        TELIGENT, INC.

2    Additionally --

3                        THE COURT:    So what is the real

4    amount or portion?

5                        MS. SAVAGE:    The real amount

6    transferred was $73,000, but out of that

7    amount there were two advanced payments that

8    totaled in excess of $25,000.    So ultimately

9    I am recovering $30,000 of $49,000 that was a

10   true preferential payment as opposed to an

11   advance payment.

12                       THE COURT:    Why the $19,000

13   haircut?

14                       MS. SAVAGE:    Because $19,000 of

15   the funds paid were not a preferential

16   transfer.    They were an advance payment for

17    the future month's use of utilities.

18              THE COURT:    I thought you said

19    it was 73, but 25 plus was an advance payment,

20    right.

21              MS. SAVAGE:    Well, it turns out

22    also Norlight got a void check, so that was

23    edited out of the original claim we filed.

24    Furthermore, there was so much doubling of the

25    transfers on the analysis that was given to us


            HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                              9


1                    TELIGENT, INC.

2    by Teligent.    So ultimately we --

3              THE COURT:    After you eliminate

4    the Debtor's errors and you eliminate the

5    advance payments, what is left?

6              MS. SAVAGE:    The true transfer

7    was $49,000.    That was truly preferential.

8              THE COURT:    You are settling

9    that for 30?

10                MS. SAVAGE:   Yes.

11                THE COURT:   Why are you are

12  giving up the 19?

13                MS. SAVAGE:   Because they have a

14  very strong ordinary course defense.

15                THE COURT:   What was the range

16  of --

17                MS. SAVAGE:   If I could just

18  refer back to my notes, Your Honor.   I

19  apologize, Your Honor, for the number of

20  paragraphs you have to go through given the

21  other four settlements that are encompassed in

22  here.

23                THE COURT:   Okay.

24                MS. SAVAGE:   There was a

25  subsequent new value of $49,941.   The

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

10

1                TELIGENT, INC.

2  transfers that were made, the new value

3    encompassed the fact there was the providing

4    of utilities going forward prior to the

5    filing.    Furthermore, during the preference

6    period the average transfer was made 43.7 days

7    from the advance with a mode of 42 days and a

8    standard deviation of 26.100 days.

9              THE COURT:    You could submit

10   orders on that.

11             MS. SAVAGE:    Yes.    I have the

12   order with me.

13             THE COURT:    You have to take out

14   the others.

15             MS. SAVAGE:    I do them

16   separately.

17             THE COURT:    Just give me the two

18   of them.

19             MS. SAVAGE:    May I approach,

20   Your Honor?

21             THE COURT:    Yes.    I need

22   separate orders dismissing these adversaries.

23   Okay?

24             MS. SAVAGE:    Yes, Your Honor.

25   We will be filing, actually probably by

```
 1                    TELIGENT, INC.

 2     Friday, a whole bunch of other stips and an

 3     omnibus order encompasses these and dismisses

 4     all the cases.

 5                    THE COURT:    Okay.    Move on to

 6     your motion.

 7                    MS. SAVAGE:    Okay.    As this

 8     Court knows, we have a motion to vacate an

 9     order assuming an insurance policy by and

10     among the Teligent Debtors and Cigna

11     Healthcare.    What basically transpired was we

12     were unaware their lease was assumed.    We had

13     filed the adversary proceeding against Cigna's

14     excess of $18 million.    We discovered since

15     that filing some of the numbers were doubled

16     an tripled again.    So the real claim is a

17     little in excess of $5 million.

18                    When we were told by Cigna's
```

19    counsel about the assumption, we notified

20    Cigna that we intend to make a motion to

21    vacate the assumption order, for the reasons

22    that I will set forth on the record

23    momentarily.    In turn, Cigna filed their

24    motion to dismiss by Your Honor's September

25    30th deadline, I think it was under the

         HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                                    12

1                    TELIGENT, INC.

2    scheduling order and we thereafter filed the

3    new motion to vacate.

4                    Since filing the motion to vacate

5    we have obviously received objections from

6    reorganized Teligent and from Cigna.   And one

7    of the things we discovered from reorganized

8    Teligent's discovery and from the affidavit of

9    Lou Duma (phonetic) attached to reorganized

10   Teligent's objection, it turns out that the

11   original policy that the representatives sued

12    under with respect to the claim in the

13    adversary proceeding was actually terminated

14    prior to the assumption motion.

15             THE COURT:   So should I just

16    deny your motion as moot?

17             MS. SAVAGE:   That is where I am

18    going with this, Your Honor.   So what I did I

19    contacted Lou Duma and I have spoken with

20    Amerada Electric (phonetic) and asked them

21    about the sequence of events that occurred

22    with respect to the renewal of the initial

23    policy.

24             And as Your Honor will see and

25    you have seen these papers and you have seen

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

13

1             TELIGENT, INC.

2    in my reply it appears that the initial policy

3    because it expired and because under both

4    Virginia law, Delaware law, Third Circuit law,

5      the Bankruptcy Court's decision in the Eastern

6      District of Virginia and also in Delaware that

7      the renewal of an insurance policy constitutes

8      a whole new contract.

9               THE COURT:   How was this raised

10     though in the motion or the answer in the

11     adversary?

12               MS. SAVAGE:   We have until this

13     Friday.

14               THE COURT:   No.   What is the

15     theory by which the assumption order justifies

16     the dismissal of the action?

17               MS. SAVAGE:   Well, do you want

18     the explanation of Cigna's theory or would you

19     like them to state it because it is their

20     motion?

21               THE COURT:   Tell me.

22               MS. SAVAGE:   Their theory is,

23     if the contract that is at issue was

24     assumed --

25               THE COURT:   There can't be a

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

```
 1                    TELIGENT, INC.

 2      preference.

 3                    MS. SAVAGE:    There can't be a

 4      preference.

 5                    THE COURT:    Why don't you make a

 6      motion to strike the defense if you are saying

 7      it is a different contract?

 8                    MS. SAVAGE:    That is what

 9      happened because they filed their motion to

10      dismiss first, and I can't indirectly or

11      collaterally attached the assumption order in

12      the adversary proceeding.

13                    THE COURT:    I thought a direct

14      attack would be an appeal from the order

15      assuming the contract.

16                    MS. SAVAGE:    Yes.  Had we

17      known about it at the time and had Cigna's

18      contract actually been discussed in the

19      motion.
```

20          THE COURT:    The Debtor knew

21   about it at the time and you are the

22   successor.

23          MS. SAVAGE:    Pardon me?

24          THE COURT:    The Debtor knew

25   about it and you are the successor of the

          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                                    15

1               TELIGENT, INC.

2    Debtor.

3          MS. SAVAGE:    No.   It is

4    reorganized Teligent that is the successor to

5    the Debtor.

6          THE COURT:    No.   The Debtor's

7    rights were split in two.   Certain interests

8    were given to you, the unsecured claims and

9    the reorganized includes that you could all

10   sue on the rights given to you.

11          MS. SAVAGE:    I understand that,

12   Your Honor.   One of the rights is to be able

13    to pursue claims on behalf of the estate, and

14    I differ from your --

15              THE COURT:    Whatever rights you

16    get, you are still the successor of the

17    Debtor.

18              MS. SAVAGE:    That is not

19    necessarily the case.    I have a long section

20    dedicated in my reply to this issue of

21    standing and as to whether or not the Debtor

22    is the successor.    And I know Cigna is

23    relying --

24              THE COURT:    Let's not -- I don't

25    think I have a question that to the extent

         HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                              16

1                    TELIGENT, INC.

2     this assumption order impairs your ability to

3     attack or recover, you may be able to make an

4     argument that it should be vacated.

5              What I question is your walking

6     away from baggage the Debtor would carry if

7     the Debtor made that motion.

8                    MS. SAVAGE:    What baggage would

9     that be?

10                   THE COURT:    Recently you had

11    knowledge of and you participated in procuring

12    the order and you are estopped from now

13    seeking to vacate that from an order you are

14    seeking or some other similar theory.

15                   MS. SAVAGE:    The problem is I

16    have read the case and decided with respect to

17    analyzing what a representative means under

18    1123 (b)(3) --

19                   THE COURT:    There is no question

20    that you are bringing the estate's claims,

21    that is all you have to bring.    It comes with

22    all the warts and barnacles attached to that

23    estate claim and I know we have had had these

24    discussions in other contexts.    And I don't

25    see how to avoid that because the extension of

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

```
 1                    TELIGENT, INC.

 2    that your theory, I don't know which papers

 3    said the extension of the theory is that you

 4    could attack every order that I sign in the

 5    case.   I won't do the whole case over unless

 6    you are telling me I have to do it over

 7    because maybe it will put a little more money

 8    into the estate --

 9              MS. SAVAGE:   Here is my question

10    then and by the way of example --

11              THE COURT:   Isn't that what you

12    are really saying, isn't the underpinning of

13    your theory, but since a preference claim, a

14    successful preference claim will put money

15    into the estate, any order I entered into

16    this case which would act as a defense to that

17    preference claim should be vacated?

18              MS. SAVAGE:   No.   I don't

19    think that that is the logical end to that

20    argument.

21              THE COURT:   Tell me where I draw
```

22      the line.    I want to know that, if that is a

23      unique situation or one of a thousand orders I

24      entered.

25                    MS. SAVAGE:    I think it is a

          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                                    18

1                      TELIGENT, INC.

2      unique situation and I will explain why.

3                      First of all, we went through the

4      docket prior to the expiration of the statute

5      of limitations and we took off every

6      settlement agreement that was entered into

7      with anyone on the docket and we examined to

8      see if that settlement agreement contained

9      general releases and most of settlement

10     agreements did contain general releases.  And

11     not only that there was a very strong analysis

12     of the underlying claims that were involved

13     and what was being waived because I also

14     looked at the corresponding motion papers in

15    conjunction with the orders that Your Honor

16    entered on other types of settlements, not

17    obviously avoidance claims or settlement in

18    the case.

19              My statute of limitations has

20    expired to sue all these people who are

21    entered into those settlement agreements.    It

22    is gone because I didn't file the motions

23    because I evaluated the underlying motions and

24    the orders entered by this Court to make sure

25    or certain I would not be wholly precluded,

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

19

1                 TELIGENT, INC.

2    and that is that.

3              As far as assumption motions are

4    concerned, 99.9 percent of the leases assumed

5    in this case are customers.  We are not suing

6    customers, we have nothing to do with that.

7    Those are customer contracts and we won't be

8      doing anything with them.

9                    As far as other assumptions are

10     concerned --

11                   THE COURT:   Are you getting that

12     because this is an insurance company that is

13     the --

14                   MS. SAVAGE:   No.   Well, what I

15     was going to say is the other motions that

16     were filed either other companies we have

17     settled with them that we have determined that

18     they --

19                   THE COURT:   No, forget about

20     settlements because you sued those people and

21     I kind of decided if they didn't decide it.

22     Tell me what makes this different from any

23     other assumption order.

24                   MS. SAVAGE:   What makes this

25     different, with respect to the Cigna

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

20

1          TELIGENT, INC.

2   Healthcare contract, it didn't mention the

3   Cigna Healthcare contract or the nature of the

4   contract or the underlying business

5   justification to assume the contract.   The

6   motion to assume the Cigna contract only

7   specifically dealt with license agreements

8   associated with leases, site leases, things of

9   that nature.   The word healthcare didn't come

10  up in the decision.

11              The discussion of whether or not

12  they could have obtained alternative

13  healthcare coverage was never mentioned.

14  The nature of the agreements was not even

15  mentioned in the motion.   It was tossed in

16  there perhaps as an afterthought just to

17  toss it into what became the lease assumption

18  motion that had to be filed prior to

19  confirmation.

20              THE COURT:   I understand if

21  someone had appealed that order they could

22  arguably say there was no factual basis to

23    support the application of the business

24    judgment rule.   But this is not an appeal

25    from the order.


        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                                        21



1                     TELIGENT, INC.

2                     What you are essentially saying

3     is the circumstances you have described are so

4     extraordinary.   You haven't said the Debtor

5     was not entitled to the protection of the

6     business judgment rule or anyone breached it

7     or anything like that.   That is really what

8     the bottom line is, they didn't analyze

9     to the effect of this preference claim or

10    giving up this preference claim when they went

11    through the assumption order.   But the

12    business judgment law protects them against

13    negligence.

14                    MS. SAVAGE:   It doesn't protect

15    them retroactively.   They are trying to

16    assert the business justification law a year

17    after they had a requirement to set it forth

18    in the original motion.

19              THE COURT:    But they didn't set

20    it forth, as I said.  But can you come back

21    under Rule 60 a year later and say this is an

22    extraordinary circumstance because I granted

23    the motion but there wasn't a factual basis

24    for granting it which is what you are saying

25    but that sounds to me like an appeal.   You

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

22

1              TELIGENT, INC.

2    think you are using Rule 60 as a substitute

3    for an appeal.

4              MS. SAVAGE:   With the exception

5    of the committee or the largest 20 or 30

6    creditors in this estate and the lenders no

7    other unsecured creditors were served with

8    this motion at the time.   So it is not like

9      the unsecured --

10                    THE COURT:    The committee was

11     served?

12                    MS. SAVAGE:    Yes, and the

13     committee is exactly -- the committee had

14     agreed to support the plan in exchange for the

15     transfer of these preference claims, including

16     the Cigna claim.    The Cigna claim was never

17     disclosed as being waived as a result of the

18     assumption --

19                    THE COURT:    That is not what the

20     plan says.

21                    MS. SAVAGE:    Pardon me?

22                    THE COURT:    The plan says you

23     are to get the Chapter 7 avoidance claims that

24     were not previously released or waived or

25     something like that.    You want me to redo

          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                            23

1                    TELIGENT, INC.

2   this whole bankruptcy and that is the problem

3   I have with this whole motion.

4           MS. SAVAGE:   I am not looking to

5   redo the bankruptcy.   I see the Maxwell case

6   by Judge Brozman where the creditors committee

7   collaterally attacked a settlement agreement

8   which they were served with notice of but

9   because the creditors committee --

10          THE COURT:   This is not a

11  settlement agreement, it is a little

12  different.

13          MS. SAVAGE:   But it has the same

14  effect and, Your Honor, I have cited a number

15  of cases, Second Circuit cases.   The Supreme

16  Court Court case which talks about Rule 60,

17  (b)(6) and contemplates this Court taking into

18  account errors or orders being entered in

19  error.

20          THE COURT:   Can I ask you a

21  different question?

22          MS. SAVAGE:   Yes.

23          THE COURT:   What is the

24  practical effect of vacating an assumption

25   order?

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

24

1                    TELIGENT, INC.

2                MS. SAVAGE:   It is only a

3   partial vacating and only with respect to

4   Cigna and it preserves the avoidance action.

5                THE COURT:   What about the

6   people who received medical benefits since

7   the assumption order?  Won't they now have to

8   pay for the medical services they have

9   received?

10                MS. SAVAGE:   The answer --

11                THE COURT:   This is coverage.

12                MS. SAVAGE:   The answer to that

13   is -- and this goes back --

14                THE COURT:   And should I take

15   that into account under Rule 60(b).

16                MS. SAVAGE:   Answer --

17                THE COURT:   Answer that question

18    first.

19                    MS. SAVAGE:    I am trying to,

20    Your Honor.

21                    THE COURT:    It is a yes-or-no

22    answer.    That is it.

23                    MS. SAVAGE:    It can't possibly

24    be a yes-or-no answer.

25                    THE COURT:    Okay.


        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                                25


1                    TELIGENT, INC.

2                    MS. SAVAGE:    The answer is

3    twofold.    The first is it goes back to my

4    first argument which is I don't think that the

5    contract that was assumed was even the

6    contract that was the subject of the adversary

7    proceeding.

8                    THE COURT:    What if I just deny

9    this motion because I wouldn't reach that

10    issue, I wouldn't even think about this

11      issue until there is a determination that

12      the assumption order has any relevance.

13              MS. SAVAGE:    If Your Honor wants

14      to dismiss this motion without prejudice

15      because there is a question as to whether it

16      is just issuable because of this other primary

17      issue that was discovered on the basis of the

18      information that I got from Teligent after we

19      filed this motion, I have no problem with

20      that.

21              THE COURT:    It sounds to me like

22      an initial argument, your initial responses

23      either in opposition to their motion,

24      essentially said it may have been a factual

25      issue.  I don't know.  That would require a

           HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

26

1                   TELIGENT, INC.

2       trial.   I just don't know.

3               MS. SAVAGE:    I am prepared to

4    proceed with an evidentiary hearing today.

5              THE COURT:   Well, I know --

6              MS. SAVAGE:   On the primary

7    issue.

8              THE COURT:   I am not even sure

9    this is the appropriate context.   You keep on

10   making these general motions in the adversary

11   proceeding that is pending which comes up.

12             MS. SAVAGE:   I didn't make the

13   first general motion.   The lenders actually

14   did that.   I responded to it.

15             THE COURT:   That is true.   What

16   is happening with that?

17             MS. SAVAGE:   I have been a

18   settlement agreement and I have been so busy

19   with other contested matters in this case, but

20   we have a settlement agreement circulating.

21             THE COURT:   As I understand it,

22   you are arguing in the first instance they

23   assumed a different contract than the one that

24   is affected by the preference.

25             MS. SAVAGE:   That appears to be

1                    TELIGENT, INC.

2    the case, Your Honor.

3              THE COURT:   All right.

4              MR. SATHY:   Good morning, Your

5    Honor.  Anup Sathy, from the law firm of

6    Kirkland & Ellis, on behalf of the reorganized

7    Teligent.

8              We are looking for a ruling on

9    the motion to vacate today.   We think there

10   are three vital reasons why.

11             First is the existence of the

12   motion having undue harm on the employees of

13   Teligent.   These are employees that are

14   fairly sophisticated.

15             THE COURT:   You never answered

16   my question, Ms. Savage. So what happens if I

17   vacate?  Let's say that it is the same

18   contract.

19          MS. SAVAGE:    Yes.

20          THE COURT:    Let's say it is the

21   same contract and I vacate, do these people

22   now have to pay?

23          Are these people who don't have

24   medical coverage and have to pay for whatever

25   medical benefits they got from this previously

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

28

1          TELIGENT, INC.

2   assumed and rejected contract?

3          MS. SAVAGE:    No, I don't think

4   that has to happen.

5          THE COURT:    Why?

6          MS. SAVAGE:    Because there is

7   the principle of quantum meriut.    Cigna under

8   his --

9          THE COURT:    Quantum meriut, they

10   get service so they have to pay it.

11          MS. SAVAGE:    But the payments

12    have been made prospectively.    It doesn't

13    negate the fact that Cigna probably would have

14    continued the contract anyway.    There is no

15    guarantee that this contract will continue in

16    perpetuity because Cigna has the absolute

17    right to cancel this contract.

18              THE COURT:    It is a different

19    thing to sign on a going forward basis there

20    is no coverage and you buy your own medical

21    coverage, which happens to all of us at one

22    time or another in different degrees, but

23    saying that the coverage you think you had and

24    you never bothered to get it, if someone went

25    to the hospital and ran up a $100,000 medical

          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                        29

1                    TELIGENT, INC.

2    bill, now you are saying you have to pay it.

3    If you have $4 million it is okay.

4              MS. SAVAGE:    This contract was

```
 5    subject to renewal again, at about the time

 6    the assumption motion was ruled on.  It was

 7    not ruled on October 18.   There was --

 8              MR. SATHY:   Judge, the way the

 9    plan worked and this is what happened, we

10    actually filed the motion just prior to

11    confirmation an the plan provided that if

12    there was a pending motion that motion would

13    carry.   That is what the plan provided.

14              THE COURT:   I am not sure what

15    the code says.

16              MS. SAVAGE:   But even within the

17    one month period after the filing there was a

18    subsequent renewal of this contract yet

19    again.   So I question whether the contract

20    that has continued in perpetuity is the same

21    contract that was even actually subject to

22    assumption of the order because my

23    understanding in speaking with Ms. Duma,

24    examining the --

25              THE COURT:   Is that an issue I
```

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

```
 1                TELIGENT, INC.

 2   could decide as a matter of law whether it was

 3   the same contract?

 4                MR. SATHY:   It is not.   And I

 5   am not even sure why I am here.   This is a

 6   dispute --

 7                THE COURT:   Don't ask me.

 8                MR. SATHY:   This is a dispute

 9   between Cigna, and the estate claims

10   representative.   If she wants to allege it is

11   a separate --

12                THE COURT:   Were are you here?

13                MR. SATHY:   Because she is

14   moving to vacate an order that is effective on

15   50 employees of Teligent and the remaining 150

16   contracts that we have assumed.   And, Your

17   Honor, this was not a throw-away motion.   It

18   was very deliberate.

19                THE COURT:   One of her arguments

20   is that there was no factual basis.   Whether
```

21    or not it was an appropriate exercise of

22    business judgment motion itself doesn't set

23    forth a factual basis to assume this

24    particular contract.

25              She is saying this is an

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

31

1                    TELIGENT, INC.

2    extraordinary circumstance.   Maybe you should

3    have another trial on whether there is a

4    factual basis to assume the contract.

5              MR. SATHY:   Your Honor, with

6    respect to the motion, the motion had a

7    121-page exhibit that listed thousands of

8    contracts that were assumed.   She is right,

9    most of contracts were with customers much but

10    there were approximately 150 that were with

11    individual parties.

12              Now I am not aware that an actual

13    factual finding was made with respect to each

14    one, but we did serve this motion to the

15    lenders, to the committee, to the major

16    creditors.  Everyone knew what these contracts

17    were.   We did do a high level preference

18    analysis, all very unlike what she suggested

19    in her papers.   And we evaluated what

20    possible claims may be --

21              THE COURT:   But that is not in

22    the record.   I am not saying if we went

23    through this procedure again you couldn't get

24    an order permitting the assumption of the

25    contract.

         HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                          32

1              TELIGENT, INC.

2              MR. SATHY:   That is where we

3    would wind up, Your Honor.

4              We filed an affidavit, not

5    because we needed to because she made

6    statements --

7                    THE COURT:    Should we do it this

8    way?

9                    MS. SAVAGE:    What was that, Your

10   Honor?

11                   THE COURT:    We will have another

12   hearing on whether or not it is an appropriate

13   exercise of business judgment to assume this

14   contract.    There are a lot of competing

15   interests.

16                   I am very concerned the way this

17   is going, people who have gotten the benefit

18   under this contract will be affected

19   regardless of who you think has not gotten

20   notice of this.

21                   MS. SAVAGE:    Well, by the same

22   token, the thousands of unsecured creditors

23   who are going to lose the ability to

24   potentially share in a recovery of Cigna also

25   didn't get the notice of the assumption of the

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                    TELIGENT, INC.

2    original motion.

3                    THE COURT:    That one is a

4    loser.  The committee did.

5                    MR. SATHY:    The way the plan

6    works, she was unsecured from the --

7                    THE COURT:    You are a successor

8    to the estate.    You are not a successor to

9    the unsecured creditors.

10                    MR. SATHY:    And when my partner,

11    Mr. Klein (phonetic) was sitting in this Court

12    and he said that the unsecured creditors will

13    not get any recovery, it turned out to be

14    true.

15                    THE COURT:    A remarkable

16    statement on the first day.

17                    MR. SATHY:    And that was a sense

18    of where this company was, and it turned out

19    to be true.  The only reason why the

20    unsecured creditors are entitled to anything

21    is because of the settlement that this Court

22    approved.

23                 THE COURT:    It is all the

24    lender's money anyway.

25                 MR. SATHY:    Absolutely all the

        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                    TELIGENT, INC.

2    lenders have had a lien on these causes of

3    action anyway.  They agreed as part of the

4    plan to let a certain part of the cause of

5    action go.   We wind up here again and again.

6                 THE COURT:    So demand that she

7    not make the motion and withdraw it, give her

8    the offer and seek the sanctions.

9                 MR. SATHY:    We asked the Court

10    to rule on this motion.   We have asked

11    this Court to rule on this motion, and Your

12    Honor --

13                 THE COURT:    Let me take a step

14    back.   Her argument is, her first argument is

15    the contract that was assumed was a different

16    contract that generated the preference.    That

17    doesn't really affect the employees who have

18    received benefits.

19              My question is, is that something

20    that could be decided as a matter of law or

21    something that has to be tried because there

22    are factual issues?

23              MR. SATHY:    Your Honor, I

24    believe that is a factual issue.    That is not

25    a question of law.    We have our opinion as to

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                 TELIGENT, INC.

2    whether or not there was one contract.    We

3    have shared information with Ms. Savage.

4              THE COURT:    That is a legal

5    issue?  Do I just read the contracts and the

6    cases?  What would the evidence show other

7    than the contract?  That is all I am asking if

8   I had a hearing.

9              MR. WISLER:   Jeffrey Wisler, on

10  behalf of Cigna.

11             May I address that?

12             THE COURT:   Yes.

13             MR. WISLER:   What the evidence

14  will show that there was one continuing policy

15  from 1998 on.   What the evidence will show is

16  an agreement that under its express terms did

17  not expire.   It is terminable and it also

18  expressly provides for rate renewals.   It's

19  what the movant's papers suggest.

20             THE COURT:   Is there a term in

21  the contract?

22             MR. WISLER:   No, there is an

23  anniversary date in the contract and at the

24  anniversary date there is a provision for a

25  rate renewal, the customer Teligent if they

            HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                        36

```
1                    TELIGENT, INC.

2    don't like the new rates may cancel, Cigna may

3    not.   Cigna may change the rates --

4                    THE COURT:   And Ms. Savage is

5    saying under the case law, as I understand

6    your argument, that makes it a separate

7    contract for assumption and assignment

8    purposes.  Right?

9                    MS. SAVAGE:   That is correct,

10   Your Honor.

11                   THE COURT:   You agree that is

12   what the contract says.

13                   All I am saying is that it sounds

14   like a legal issue which I could resolve.

15   In other words, if I had a hearing I would

16   read -- you put in the contract, I would read

17   it.   There is no testimony.  I assume the

18   contract is clear and then I would read her

19   case and make a decision.  That is all I am

20   suggesting.

21                   MR. WISLER:   That is possible,

22   Your Honor.  I agree with Mr. Sathy that we

23   need a decision now.  What we don't want is to
```

24    have continuing motions by the moving party.

25    That is a new argument.


       HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                    TELIGENT, INC.

2              THE COURT:    I don't know how I

3    could vacate an order without notice to

4    employees.

5              MR. WISLER:    What I am saying,

6    Your Honor, this issue may come up again and

7    again.    In Superior (phonetic), the motion to

8    vacate the issue was this tangential issue,

9    Judge,, it was not an executory contract.    It

10   could never have been assumed.    You don't

11   address it.

12              It was a motion to assume the

13   contract, the contract was assumed, there is a

14   reliance, there is prejudice and you can't go

15   back on them.

16              THE COURT:    She is saying it is

17    a different contract.    I understand you are

18    saying it is the same contract, but she is

19    saying it is a different contract.

20          MR. WISLER:    When faced with

21    these types of issues before, the courts in

22    Superior Court and Feldman said I am not even

23    getting to the issue of whether or it not it

24    is a true lease or an executory contract.    It

25    was assumed.    The Debtor's conduct is imputed

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                TELIGENT, INC.

2    to the trustee or the successor or whatever.

3          THE COURT:    I don't think I have

4    any question on that one.

5          MR. WISLER:    So I don't have any

6    question on it either, Your Honor.    Let me

7    give you an example.    One of the defenses

8    that we discussed in our memorandum is the

9    fact that all prepetition -- if there were any

10    prepetition payments due to Cigna

11    postpetition, they are authorized to be paid

12    under the original employee benefits order.

13    That is an absolute defense.    So if we don't

14    address the issue of standing and estoppel

15    now, we will face this again later.

16              THE COURT:    At the beginning of

17    this presentation when we were talking about

18    settlement you said there was an existing

19    order authorizing payments, and since the

20    Court had authorized payments I can't

21    challenge it.

22              What he is really saying if these

23    had not been paid within the 90 days before

24    the filing of petition, it would have been

25    paid pursuant to that order.


        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                            39


1              TELIGENT, INC.

2              MS. SAVAGE:    I don't know.    I

3    haven't seen the order.    It has not been

4    raised in its papers.

5              MR. WISLER:    It absolutely

6    was.

7              MS. SAVAGE:    In which, their

8    original motion?

9              MR. WISLER:    Yes, Your Honor, it

10   was --

11             THE COURT:    In motion and in

12   their response?

13             MR. WISLER:    In the response.

14             MS. SAVAGE:    In your objection

15   to those papers.    I'm sorry, I am thinking of

16   the motion to dismiss.    I was sure we are on

17   same page.

18             MR. WISLER:    I am not asking

19   Your Honor to rule.    This is another instance

20   we will have to come back again and again and

21   maybe then again if we don't resolve the

22   issues of equitable estoppel and standing at

23   this point.

24             What Mr. Sathy is pointing out is

25    he has to keep coming back because those types

        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                    TELIGENT, INC.

2    of issues affect him and a lot of other

3    people, not just the two parties to the

4    litigation.

5              MR. SATHY:   And, Your Honor,

6    just from reorganized Teligent's perspective,

7    the concern is if he starts down this road

8    there is no end because there is just --

9              THE COURT:   I think you are

10   right on that.

11             MR. SATHY:   All she has is a

12   potential preference claim.   If Your Honor

13   recalls we had dozens and dozens of

14   stipulations with Verizon.   And I see counsel

15   for Verizon here, and we waived claims against

16   Verizon and she did not sue them because she

17   is bound by the plan, and she only gets what

18    we given to her and that was the gift.    If

19    she is arguing the gift was too small she

20    should have been there at the table.    She

21    wasn't.  The committee was.

22              THE COURT:    I hear you.    What I

23    would like you to supplement, I would like to

24    know the amount of claims that were paid for

25    post assumption treatment under policy.    I

              HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                    TELIGENT, INC.

2    want to know the effect this will have on

3    people, on the employees and you put in some

4    proof on that.  You could put in any response

5    to that if you want.

6              MS. SAVAGE:    I have to evaluate

7    that order, that postpetition order

8    authorizing prepetition benefit payments.

9              THE COURT:    So you could

10   supplement your motion.

11              MS. SAVAGE:    No.    Well,

12      potentially, but not in terms of trying it

13      vacate it, but in terms of most of the orders

14      you had a ceiling dollar amount, how much

15      could be spent to pay the prepetition and

16      there had been a register maintained by Ernst

17      & Young demonstrating who was paid pursuant to

18      that.    The question is could they have been

19      paid in any event given the ceiling on

20      order.

21              MR. WISLER:    And in the cases we

22      cite it doesn't matter.    For instance, in the

23      order Your Honor entered, you didn't direct

24      payment, you authorized payment.    I don't

25      recall a payment, but it is irrelevant because


                HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                        42


 1                    TELIGENT, INC.

 2      nothing was paid under it.

 3              THE COURT:    But you would have

 4    paid --

 5                MR. WISLER:   It is a reliance.

 6    It is a Court approval of what was paid

 7    prepetition.

 8                THE COURT:   She saying it if

 9    there is a limitation, in other words if you

10    were authorized less than the $4 million, then

11    arguably that portion would be preference.

12    You could provide me with a copy of the order

13    also because it is not so easy to find.

14                MR. WISLER:   I have one with me.

15                THE COURT:   But I would like an

16    affidavit as to the claims history and in

17    essence what the effect would be in vacating

18    the order or potential effect since people

19    have presumably gotten medical benefits.   Is

20    that something that is difficult to do?

21                MR. SATHY:   I am not sure --

22                THE COURT:   Because I see

23    numbers bandied about in the reply, but there

24    is no evidentiary basis.

25                MR. SATHY:   I suspect we will be

1                    TELIGENT, INC.

2    able to do that.   My opinion is it is not

3    relevant.   She has to meet the burden of

4    extraordinary circumstances.   The effect on

5    the other party is not a relevant

6    consideration for determining whether she is

7    she satisfied, 60(b)(6).   It is her burden.

8    The effect on the other period of time it is a

9    relevant factor, but we don't need to show

10   anything.

11                    THE COURT:   I would like to know

12   if there were going to be people hanging out

13   there who will suddenly be liable for medical

14   benefits that they thought would be covered by

15   a policy and are not even parties to this

16   motion.

17                    When can you submit that?   I have

18   no idea what is involved in it.

19                    There are statements in the

20    papers regarding the thousands an thousands of

21    claims that are being paid.    They have to

22    come from somewhere.    Where did this come

23    from.

24                    MR. WISLER:    The statements in

25    the papers said thousands of claims processed

          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                          44

1                        TELIGENT, INC.

2     on an annual basis.    I don't think we

3     estimated a dollar amount.

4                    THE COURT:    I think someone had

5     a statement and you are telling me you don't

6     know it.

7                    MR. WISLER:    I am not saying you

8     can't know it.    I can't tell you it is easy

9     and I can tell you, having represented Cigna

10    for some time, that it is going to be a

11    difficult target, but an estimate is certainly

12    doable.

13          THE COURT:   You say thousands of

14   claims of Teligent employees and their

15   dependents have been processed and paid by

16   Cigna since the entry of the assumption

17   order.   So that must have been from

18   somewhere.

19          MR. WISLER:   That is what I am

20   telling you, Your Honor.   We did not estimate

21   a dollar amount.

22          THE COURT:   You have to have

23   some history of what the average claim is or

24   something like that.

25          MR. WISLER:   Yes, Your Honor.


     HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                    45


1             TELIGENT, INC.

2          THE COURT:   I just want to

3   know.

4          MS. SAVAGE:   If I also may point

5   out.   One of the reasons in that that Ms.

6    Mount (phonetic) month talked that the Cigna

7    policy was renewed after the insurance rate

8    was raised back in, I think it was February of

9    2002, was because of the burden of this, of so

10   many former employees on COBRA.

11            The only thing I could say to

12   that is that even if the Cigna policy were

13   terminated, under the COBRA laws, the people,

14   the COBRA people would still have a right to

15   pay, to obtain a rate, an individual rate from

16   Cigna and continue that coverage.

17            THE COURT:   I am not going to

18   grant any 60(b) motion because you are asking

19   me to in the exercise of business judgment.

20            MS. SAVAGE:   That is not the

21   argument.

22            THE COURT:   Are you saying there

23   was not sufficient disclosure of the grounds

24   to assume this contract?  You could challenge

25   that on 60(b), and if you challenge it may be

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

```
 1                   TELIGENT, INC.

 2   all they have to do is put on their proof and

 3   that will be the end.

 4             MS. SAVAGE:   The question is not

 5   whether I could impeach their business

 6   judgment, which I am not looking to do.

 7             THE COURT:   Sure you are.

 8             MR. SATHY:   That is absolutely

 9   what she said in her papers.

10             THE COURT:   That is what you are

11   asking me to do.

12             MS. SAVAGE:   That is not what I

13   asked.

14             THE COURT:   Take a look at it

15   again, and consider all these other facts and

16   the people on COBRA, it might be a hardship,

17   but for the $4 million I may let them get a

18   COBRA policy.

19             MS. SAVAGE:   No, Your Honor,

20   excuse me, in our initial motion, a motion to
```

21    vacate, we knew of no business justification.

22    There were no factual statements or findings

23    with respect to the assumption in the first

24    place.   So we didn't sit there and impeach

25    any business judgment because there was not


       HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                 TELIGENT, INC.

2    any business justification offered in the

3    first place.

4                 THE COURT:   Do you want to have

5    a trial on the appropriateness of the business

6    judgment?

7                 MS. SAVAGE:   I want to have a

8    hearing on the appropriateness of trying to

9    retroactively to argue business judgment when

10    it should have been argued at the time of the

11    assumption of the order and that is what our

12    position is.

13                 THE COURT:   I got it.

14          MR. WISLER:   I completely

15   disagree with it.

16             THE COURT:   When can you get the

17   information provided?

18             MR. WISLER:   I will provide

19   it -- if it is available, Your Honor.  And I

20   could provide it --

21             THE COURT:   Can you provide it,

22   well, next week is Thanksgiving.   Can you

23   provide it by the end of the month or let me

24   know it is just --

25             MS. SAVAGE:   Yes, Your Honor.


     HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                    48


1              TELIGENT, INC.

2    I could either report to you that it is

3    impossible overall, which I doubt, or

4    impossible in that time frame, or I could

5    provide it to the Court.

6              THE COURT:   Okay.  I will

7    reserve decision.

8                    MS. SAVAGE:    Can I address the

9    procedural posture of the pending motion to

10    dismiss, though, because Cigna also made their

11    motion to dismiss?

12                    THE COURT:    Right.

13                    MS. SAVAGE:    We are filing, I

14    believe actually today our objection to that

15    motion to dismiss.    We are doing an omnibus

16    objection for all the objections that were on

17    before Your Honor on January 22.    We are

18    incorporating by reference our motion and are

19    ready to reply here in the main case.

20                    THE COURT:    It would help if you

21    put it on Pacer though.

22                    MS. SAVAGE:    I could do it.    It

23    is not a big deal.    Presumably, Cigna will

24    have a right to reply now by December 15,

25    pursuant to Your Honor's scheduling order to


         HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1                TELIGENT, INC.

2    the facts we have set forth and presumably

3    annex the order that they are relying on, that

4    postpetition first day order.

5                THE COURT:   That is a real

6    simple argument as I understand it.   The

7    contract is assumed.   There is no preference

8    and the contract was assumed.   And unless the

9    order is vacated they have a complete defense,

10   a preference action, right?

11               MS. SAVAGE:   No, not if the

12   contract that was assumed is actually not the

13   contract that was in place at the time of the

14   assumption motion.

15               THE COURT:   Do I have all the

16   contracts so I could read them?  Do I have a

17   complete record to make that determination on

18   that motion?

19               MR. WISLER:   No.

20               MR. SATHY:   I suspect you do

21   not, Your Honor.

22               MR. WISLER:   Our point is you

23    don't have to decide that to decide the

24    motion.

25              THE COURT:   So I will decide the

         HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                                50

1                   TELIGENT, INC.

2    motion based on the existing record, if you

3    are satisfied with it.  You may not like the

4    resolution of it based on this record because

5    I don't know how I am going to determine if

6    they are the same contract if I can't read the

7    contract.

8              MR. WISLER:   I can provide Your

9    Honor with the contracts along with that

10   affidavit.   I shouldn't say contracts.

11   There is only one contract.   There are

12   multiple policies and I could provide whatever

13   Your Honor wants in that regard.

14              What I was saying is I don't

15   think Your Honor has to consider the multiple

16    contract argument for purposes of denying the

17    motion to vacate.   If Your Honor disagrees I

18    respect that, but I will submit what Your

19    Honor --

20              THE COURT:   I have only asked

21    for one thing and I will decide the motion

22    based on what I have.

23              MR. SATHY:   One final point.   I

24    know I have another motion.

25              THE COURT:   And I have a judges

          HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                            51

1                    TELIGENT, INC.

2     meeting as well.

3              MR. SATHY:   The reorganized

4     Teligent continues to get pulled into these

5     matters and it is a financial drain to the

6     company.

7              THE COURT:   So what could I do?

8              MR. SATHY:   We need a ruling,

9      guidance from the Court that what the plan

10     says is what it says.

11             THE COURT:    I think what you

12     have to do is, if you think a motion is made

13     in bad faith, she is entitled to make a

14     motion, I can't say she can't make motions, if

15     you think a motion is made in bad faith, you

16     insist in accordance with Rule 9011 that she

17     withdraw it.   You send her a copy of your

18     motion for sanctions.

19             MR. SATHY:    That is our

20     procedure.

21             THE COURT:    If she doesn't

22     withdraw it within 21 days, and I agree with

23     you that the motion has no basis in law or in

24     fact or that it is frivolous, she will have to

25     pay out of her pocket, not out of the estate's


            HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

1              TELIGENT, INC.

2    pocket.   That is all.   But I can't tell her

3    she can't make motions.    The plan says what

4    it says.   The question is what it means.

5              MR. SATHY:   If we need to have a

6    hearing on that, that is fine.   We think the

7    contract issue is a separate issue.   If she

8    wants to argue it is a separate contract and

9    the contract is assumed and as a matter of law

10   that doesn't change the claim, She could do

11   that within the contract's language.   You

12   can't enlarge or grant under the plan.

13             THE COURT:   I agree, but the

14   question is what does she have.

15             MR. SATHY:   It is very clear,

16   she has everything unless it was previously

17   waived or released.

18             THE COURT:   I agree that the

19   representative has whatever the plan gave the

20   representative the right to do.   Now, there

21   may be some collateral rights.   I don't

22   know.   You are not going to get that kind

23   of statement other than the obvious, it is

24    the plan, it describes the parameters of

25    the representative's powers.   It is what

1                    TELIGENT, INC.

2    it is.

3                    MS. SAVAGE:   If I may, Your

4    Honor, we have the Exhibit A and B to our

5    reply.

6                    A is the policy that Teligent

7    provided, the Cigna policy.   And B is a

8    series of e-mails between Cigna, the insurer,

9    the insurance broker relating to the renewal

10    of the policy.  Ms. Duma is in Court today and

11    I relied on her affidavit in support of the

12    motion.

13                    THE COURT:   I have another

14    motion and a meeting today, so let us wrap it

15    up.

16                    MS. SAVAGE:   I am.  And all

17   E-mails were received by Ms. Duma in the

18   course of her regular business.   I know it is

19   attached to her papers.

20            MS. SAVAGE:   I want to move them

21   into evidence.

22            THE COURT:   This is not an

23   evidentiary hearing.   If I determine that we

24   need an evidentiary hearing, I haven't heard

25   them dispute authenticity of the E-mails or

        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769

                                                        54

1                 TELIGENT, INC.

2    whatever they are, where they say they come

3    from them.

4            MS. SAVAGE:   That is fine, Your

5    Honor.

6            MR. BERGER:   This will just take

7    one minute.   I am the local counsel for

8    defendant Cigna.

9            We received a proposed order

10    approving immediate mediation proceedings.  We

11    were never served with the motion.   Having

12    seen the way these adversary proceedings and

13    these issues are going, we don't think this is

14    an appropriate matter to --

15            THE COURT:   Put in opposition

16    you were never served with the motion.

17            Thank you.

18

19

20

21

22

23

24

25


        HUDSON REPORTING & VIDEO, INC. 1-800-310-1769


                                                    55



 1                 TELIGENT, INC.

 2            C E R T I F I C A T E

3

STATE OF NEW YORK       )

4                        )   ss.:

COUNTY OF NEW YORK       )

5

6

7             I, MINDY ROTHMAN, a Shorthand

8        Reporter and Notary Public within and for

9        the State of New York, do hereby certify:

10            I reported the proceedings in the

11       within-entitled matter and that the within

12       transcript is a true record of such

13       proceedings.

14            I further certify that I am not

15       related, by blood or marriage, to any of

16       the parties in this matter and that I am

17       in no way interested in the outcome of

18       this matter.

19            IN WITNESS WHEREOF, I have hereunto

20       set my hand this 21st day of November,

21       2003.

22

23

24                 MINDY   ROTHMAN

25

HUDSON REPORTING & VIDEO, INC. 1-800-310-1769